IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

LAMAR ROBINSON,                         *

    Plaintiff,                      *

vs.                                     *
                                      CASE NO. 3:05-CV-21 (CDL)
ST. MARY'S HEALTH CARE SYSTEM,          *
INC., a Georgia Corporation, and
DONALD C. PALSGAARD, M.D.,               *
Individually,[1]
                                           *

    Defendants.
                                           *

O R D E R

This case arises from Defendant St. Mary's Health Care System, Inc.'s, ("St. Mary's") termination of Plaintiff Lamar Robinson's employment. Plaintiff claims that his termination violates the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101. He also asserts state law claims, contending that St. Mary's invaded his privacy and was negligent by releasing information in his medical records. St. Mary's has moved for summary judgment on all of Plaintiff's claims. For the following reasons, the Court grants St. Mary's Motion for Summary Judgment (Doc. 27) as to Plaintiff's federal law ADA claim and declines to exercise jurisdiction over Plaintiff's remaining state law claims which are therefore dismissed without prejudice.

---

[1] Plaintiff stipulated to the dismissal with prejudice of his claims against Defendant Donald C. Palsgaard.

BACKGROUND

In 1982, St. Mary's hired Plaintiff as a private duty nurse. Shortly thereafter, Plaintiff became certified as an emergency medical technician ("EMT") and began working at St. Mary's as an EMT. Plaintiff worked for St. Mary's as an EMT until June 2004 when he was terminated.

In 1997, Plaintiff was diagnosed with Type II diabetes. Plaintiff has also been diagnosed with hypertension, sleep apnea, insomnia, and sleep deprivation. Additionally, while working for St. Mary's Plaintiff suffered a back injury which led to chronic back pain. As a result of his injury and illnesses, Plaintiff was prescribed Ambien (to help him sleep) and Lortab (an opiate pain reliever). Despite Plaintiff's illnesses and medications, Plaintiff continued to work, unhindered, as an EMT for St. Mary's.[2]

While on an EMT call on June 4, 2004, Plaintiff's partner, Janet Berthelot, noticed that Plaintiff was acting strange and was unresponsive to some of her requests. When Ms. Berthelot and Plaintiff arrived at St. Mary's with their patient, Plaintiff continued to act confused and tired. Plaintiff was later found by another St. Mary's employee leaning against a wall, asking weird questions, and almost asleep or unconscious. Ms. Berthelot thought that Plaintiff might have been having a diabetic episode and checked

---

[2] Plaintiff claims that during his twenty-two years of employment with St. Mary's, he felt unable to work because of his diabetes on only four occasions. On each of these occasions Plaintiff was able to continue to work with assistance from a co-worker or supervisor.

his blood glucose level, which was normal. Plaintiff's condition continued to deteriorate, so Ms. Berthelot took Plaintiff to the emergency room.

In the emergency room, Plaintiff was treated by Dr. Donald Palsgaard. Plaintiff was put on oxygen, his sugar level was checked, and an IV was started. Plaintiff was unresponsive to treatment and his condition continued to decline. One of the nurses working on Plaintiff suggested that they try giving Plaintiff a dose of Narcan, an anti-narcotic. Plaintiff immediately responded to the Narcan and began to recover. While in the hospital, Plaintiff was given another dose of Narcan before he was released. Plaintiff claims to have no memory of the events that occurred on June 4, 2004.

As a result of this incident, Dr. Palsgaard came to the conclusion that Plaintiff was using some sort of narcotic, prescribed or not, while on the job. Additionally, while in the emergency room, Plaintiff saw St. Mary's Employee Health Services Coordinator, Sherry Ann Ward. Plaintiff told Ms. Ward that he had taken Ambien and Lortab that day. Ms. Ward then reported Plaintiff to his supervisor, Bonnie Butler. Ms. Butler, along with St. Mary's Vice President of Human Resources, Jeff English, made the determination to terminate Plaintiff's employment.

On June 8, 2004, Plaintiff was terminated for violating St. Mary's drug and alcohol policy. This policy allows the use of prescription medication while on the job, but requires that an

employee who is taking medication that "could affect [his] ability to perform [his] job in a safe and efficient manner" notify his supervisor. (Drug and Alcohol Policy 1.) Additionally, the policy authorizes St. Mary's to test employees for drugs when "management has reasonable suspicion to believe that an employee . . . has drugs or alcohol in [his] system . . . ." (Drug and Alcohol Policy 2.) Plaintiff was terminated for having a positive drug screen while on duty and for failing to report that he was on a medication that could affect his ability to perform his job in a safe and efficient manner.

Plaintiff filed this lawsuit claiming that his termination was the result of discrimination. Additionally, Plaintiff claims that the hospital violated his right to privacy when it released his health records to his supervisor, Ms. Butler. Finally, Plaintiff alleges that St. Mary's was negligent when it disclosed information in his medical records. Defendant St. Mary's has moved for summary judgment on all of Plaintiff's claims.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing that there is no genuine issue of material fact.

4

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Once the moving party has met its burden, the burden shifts to the non-moving party to show that there *is* a genuine issue of material fact. *Id.* at 324. Thus, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## II. ADA Claims

The ADA prohibits discrimination in employment on the basis of disability. 42 U.S.C. § 12112(a). An employer cannot discriminate "against a qualified individual with a disability based on that disability when the discrimination involves the hiring, advancement, termination, or conditions of employment of that qualified individual." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1327 (11th Cir. 1998). Additionally, under the ADA, "an employer must make reasonable accommodations that allow a disabled individual to perform [his] job, unless that accommodation would cause an undue hardship." *Id.*

To avoid summary judgment, Plaintiff must first point to sufficient evidence to support a prima facie case of employment discrimination. *See Wascura v. City of South Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A prima facie case is established under the ADA by showing that (1) the plaintiff has a disability, (2) the plaintiff is

5

"a qualified individual, which is to say, able to perform the essential functions of the employment position that he holds or seeks with or without reasonable accommodation," and (3) that "the defendant unlawfully discriminated against him because of his disability." *D'angelo v. Conagra Foods, Inc.*, 422 F.3d 1220, 1226 (11th Cir. 2005) (internal quotation marks and citations omitted); *see also Rossbach v. City of Miami*, 371 F.3d 1354, 1356 (11th Cir. 2004). If the plaintiff establishes a prima facie case, a presumption of discrimination is created, and the defendant has the burden of articulating a legitimate, non-discriminatory reason for the plaintiff's termination. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004). The plaintiff can then avoid summary judgment if he produces sufficient evidence from which a reasonable jury can conclude that the defendant's articulated non-discriminatory reason is pretext for discrimination. *Id.*

Here, Defendant argues that Plaintiff has failed to establish a prima facie case of discrimination under the ADA because no evidence exists that (1) he is disabled or (2) that St. Mary's discriminated against him because of his disability. Furthermore, Defendant argues that even if this Court finds that a prima facie case of discrimination has been made, Defendant has articulated a legitimate non-discriminatory reason for Plaintiff's termination—violation of the hospital drug policy—and Plaintiff has produced no evidence that

this reason is a pretext for discrimination. Consequently, Defendant maintains that it is entitled to summary judgment.

A. Disability

"In order to state a claim for wrongful termination under the ADA, a plaintiff must first prove that he has a disability as defined by the Act." *Standard*, 161 F.3d at 1327. A disability as defined by the ADA is either (1) "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual[,]" (2) "a record of such an impairment[,]" or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C). Plaintiff claims that he has a physical impairment that has substantially limited a major life activity and that St. Mary's regarded him as having such an impairment. 42 U.S.C. § 12102(A), (C).

*1. Physical Impairment*

Under the physical impairment definition of disability, the Plaintiff must first show that he has an impairment. The Court then "must identify the life activity that the [P]laintiff claims has been limited and determine whether it is a major life activity under the ADA." *Rossbach*, 371 F.3d at 1357. "Finally, the [C]ourt must determine whether the impairment 'substantially limits' that activity." *Id.* Plaintiff identifies the following impairments: insomnia, sleep apnea, Type II (non-insulin dependent) diabetes, hypertension, and chronic back pain. Plaintiff claims that his major

7

life activities of working, bending or lifting, and sleeping are substantially limited by these impairments.

First, there is no merit to Plaintiff's claim that his major life activity of working was substantially limited by any of his impairments. In fact, Plaintiff admits that he did "his job without problems for over 22 years."[3] (Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J. 8.) Plaintiff cannot be considered disabled because of his inability to work when he admits that he was capable of working while employed for St. Mary's. Additionally, it is not enough for Plaintiff to assert that he is unable to perform one particular job. Instead, Plaintiff must present evidence that one of his impairments has significantly restricted his "ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Standard*, 161 F.3d at 1327. Plaintiff has therefore failed to present evidence that he has an impairment which substantially limited his major life activity of work.

Second, regarding Plaintiff's asserted major life activity of "bending or lifting," Plaintiff has failed to introduce any evidence establishing that one of his impairments substantially limits this

---

[3] In reference to his specific asserted impairments: Plaintiff testified that there was never a time when he was unable to go on an EMT call because of his diabetes. (Pl.'s Dep. 98:23-99:7, Mar. 31, 2006.) Plaintiff remembered only four instances when his diabetes symptoms were so bad that he informed his supervisor that he wasn't feeling well. (Pl.'s Dep. 100:4-18; 110:5-11.) Additionally, when asked if there was "any way in which sleep apnea affected [Plaintiff's] ability to do [his] job," he responded by stating "No." (Pl.'s Dep. 118:3-7.)

8

activity. Assuming that "bending or lifting" is a manual task which qualifies as a major life activity under the ADA regulations, Plaintiff would have to present evidence that "he is substantially limited in a range of manual tasks rather than a narrow category thereof." 29 C.F.R. § 1630.2(I);[4] *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1223 (11th Cir. 2000). Instead, Plaintiff states that (1) he used to work in the yard at least once or twice a week, (2) he enjoys "doing stuff with cars," (3) that there are no activities which he could do ten years ago that he cannot do now, (4) that he is able to walk, and (5) that he is planning to get back into fishing. (Pl.'s Dep. 42:6-11, 43:11-19, 44:9-25.) These statements indicate that Plaintiff is able to perform a variety of manual tasks. Plaintiff has presented no evidence concerning the substantial limitation of this activity, and Plaintiff cannot be considered disabled under this theory.

Finally, Plaintiff claims that his impairments have substantially limited the major life activity of sleeping. The Court agrees that sleeping is a major life activity. *See Rossbach*, 371 F.3d at 1357 ("Several courts, for example, have found that sleeping constitutes a major life activity."). Therefore, the Court must determine whether Plaintiff's impairments substantially limit his sleep. *Rossbach*, 371 F.3d at 1357.

---

[4]The Eleventh Circuit and Supreme Court have frequently looked to the EEOC regulations when construing the ADA. *Rossbach*, 371 F.3d 1357 n.4.

A major life activity is substantially limited if it is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform [that] particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform the same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii). Plaintiff has failed to present any evidence which shows that his sleep has been substantially limited by his hypertension, diabetes, or back pain/injury. Plaintiff did testify, however, that his sleep apnea, by virtue of not sleeping well at night, could cause him to fall asleep in the middle of a conversation. (Pl.'s Dep. 117:19-24.) Additionally, Plaintiff stated that he had to take medication to sleep at night. (Pl.'s Dep. 118:14-24.) Finally, Plaintiff's medical records reveal that he had sleep deprivation, insomnia, and sleep apnea. (Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J. Ex. N, M.) Based on this evidence, the Court assumes, without deciding, that Plaintiff's sleep apnea and insomnia substantially limited his major life activity of sleeping so as to make Plaintiff disabled under the ADA. *See, e.g., Mont-Ros v. City of West Miami*, 111 F. Supp. 2d 1338, 1354-55 (S.D. Fla. 2000) (discussing cases where sleep apnea has been held to substantially limit the major life activity of sleeping).

In sum, Plaintiff has failed to establish that his diabetes, hypertension, or chronic back pain are actual impairments that

10

substantially limit a major life activity. The Court, however, assumes for purposes of the pending Motion for Summary Judgment that Plaintiff is disabled based upon his actual impairments of sleep apnea and insomnia which substantially impair his major life activity of sleeping.

### 2. *Regarded as Having an Impairment*

Plaintiff also argues that St. Mary's regarded him as having a disability. The EEOC has interpreted "regarded as having such an impairment" to mean:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
> (3) Has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l). Thus, "[a]s with actual disabilities, a perceived impairment must be believed to substantially limit a major life activity of the individual." *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1230 (11th Cir. 1999).

Plaintiff argues that "[t]he evidence shows that Dr. Palsgaard and other employees of the hospital clearly were aware of Plaintiff's back injury[,] . . . his diabetic condition and his hypertension." (Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J. 9.) Additionally, Plaintiff claims that "[a]pparently the other conditions were known to Bonnie Butler who terminated Plaintiff . . . since she accessed

11

his medical records to obtain the information regarding his alleged violation of St. Mary's drug policy." (*Id.*) Plaintiff then summarily alleges that Ms. Butler knew that "these [unspecified] conditions affected Plaintiff's ability to sleep and on occasion to work without pain medication." (*Id.*)

As a threshold matter, the court notes that Dr. Palsgaard is not an employee of St. Mary's and did not make decisions for St. Mary's. (Palsgaard Dep. 7:5-21, Apr. 5, 2006.) Consequently, since Plaintiff has not argued that Dr. Palsgaard's knowledge should be somehow imputed to St. Mary's, Dr. Palsgaard's knowledge is irrelevant as to whether Plaintiff's employer regarded him as disabled. *See, e.g., D'Angelo*, 422 F.3d at 1228 ("[A] person is regarded as disabled within the meaning of the ADA if a *covered entity* mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activity.") (internal quotation marks and citation omitted) (emphasis added).

Assuming that Ms. Butler knew Plaintiff had a back injury, diabetes, and hypertension, Plaintiff has presented no evidence to support his allegations that Ms. Butler believed that Plaintiff's impairments substantially limited a major life activity. Additionally, the evidence shows that the parties who made the decision to terminate Plaintiff likely did not know that he had any impairments. Jeff English, St. Mary's vice president of human resources, stated that he "did not know that [Plaintiff] was diabetic

or had any other health condition." (English Aff. 1, May 15, 2006.) Mr. English also stated that he had "no reason to believe that Ms. Butler knew that Mr. Robinson was diabetic or had any other health condition." (English Aff. 1.)

Plaintiff also claims that Ms. Butler "apparently" knew of Plaintiff's impairments because she looked at his medical records in order to obtain information regarding his violation of the drug policy. This factual allegation is disputed by the affidavit of Sherry Ann Ward, St. Mary's employee health services coordinator. Ms. Ward stated that Plaintiff told her that he had taken three or four pain killers. (Ward Aff. 1, May 15, 2006.) Ms. Ward then reported Plaintiff's actions to Ms. Butler, but states that she did not discuss with Ms. Butler any of Plaintiff's health conditions. (Ward Aff. 1.) Plaintiff has not provided any evidence that shows that Ms. Butler actually looked at his medical records.[5] Consequently, since there is no evidence that St. Mary's knew Plaintiff had an impairment or believed that impairment substantially

---

[5] Plaintiff's assumption and self-serving statement that Ms. Butler looked at his medical records and consequently had to know that he had an impairment, which substantially limited a major life activity, do not create a genuine issue of material fact requiring submission to the fact finder. *See Smith v. Fed. Exp. Corp.*, 191 Fed. App'x 852, 855 (11th Cir. 2006) (explaining that summary judgment is appropriate where there is no evidence to support plaintiff's assertions other than his own "self-serving statements"); *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) ("For factual issues to be considered genuine, they must have a real basis in the record[;] . . . mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion.") (quotation marks and citations omitted).

13

limited one of his major life activities, Plaintiff is not disabled under the "regarded as" theory of disability.

B. <u>Discrimination Based on Disability</u>

Under the ADA, "no covered employer may use the disability of an otherwise qualified person as an excuse for discrimination in hiring, promotion, discharge, compensation, training, or other terms, conditions, and privileges of employment." *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1447 (11th Cir. 1998). Therefore, in establishing a prima facie case of discrimination, Plaintiff must show that St. Mary's discriminated against him on the basis of his disability. The Court has narrowed this analysis by concluding that Plaintiff has only two possible disabilities, sleep apnea and insomnia, which limited the same major life activity, sleeping. Plaintiff must therefore produce evidence from which a reasonable jury could conclude that he was discriminated against because of his sleep apnea or insomnia.

*1. Similarly Situated Individuals*

Plaintiff argues that he can establish a prima facie case of discrimination because similarly situated employees without his disabilities were not terminated when they violated St. Mary's drug policy. In order to support this proposition, Plaintiff cites to Dr. Palsgaard's deposition where Dr. Palsgaard states:

> In the olden days, people that couldn't perform their work duties, in cases--many cases that I can remember, were kept on in employment and paid, and they had different duties given them. And I can remember at least two nurses

14

>     in the emergency room who actually had a problem with drug
>     addiction and stealing drugs from the emergency room.
>
>     Now, I'm not saying that [Plaintiff] has a drug
>     addiction problem. I don't think he does. But just to
>     show you, you know, similar things were involved, drugs and
>     et cetera, et cetera, and those people were moved to
>     different areas of the hospital and given different duties
>     so they didn't have access to the drugs, and kept on
>     payroll, given another chance.

(Palsgaard Dep. 23:5-18.) This is the only evidence Plaintiff provides to show that similarly situated persons without his disability were treated differently. This evidence is legally insufficient to create a prima facie case of discrimination.

First, the Court notes that Plaintiff is an EMT and his alleged comparators are nurses. In order for an employee to be similarly situated to Plaintiff, the employee must be "similarly situated in all relevant respects." *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003)(quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). In other words, the employee must have "very similar job-related characteristics" to Plaintiff, and be "in a similar situation" to Plaintiff. *MacPherson v. University of Montevallo*, 922 F.2d 766, 774 (11th Cir. 1991). Plaintiff has failed to allege or show that his duties as an EMT were "very similar" to those of the two nurses.

Second, Plaintiff has failed to show that the nurses were "involved in or accused of the same or similar conduct" and "disciplined in [a] different way[]." *Knight*, 330 F.3d at 1316. Dr. Palsgaard's statement does not indicate that the nurses took

15

drugs while at work or had positive drug tests while at work. In fact, the conduct that the nurses are accused of is (1) having a drug addiction, and (2) stealing drugs at work. Additionally, Dr. Palsgaard does not discuss discipline of the nurses at all; instead, he discusses their accommodations.[6] Therefore, there is no evidence as to whether or how the nurses were disciplined for any alleged misconduct.

Finally, Dr. Palsgaard's statement explains that he is recalling St. Mary's policies from "the olden days." (Palsgaard Dep. 23:5.) Dr. Palsgaard began working as a subcontractor at St. Mary's in 1980. (Palsgaard Dep. 6:18-20.) Consequently, there is, approximately, a twenty-five year time span within which the aforementioned nurses could have been employed at St. Mary's. Those nurses may have been under different regulations, supervisors, and policies than Plaintiff. The Court therefore finds that these unnamed nurses are not similarly situated to Plaintiff.

### 2. Other Evidence of Discrimination

Plaintiff can also establish a prima facie case of discrimination by presenting other evidence of discrimination. For example, discrimination occurs when an employer refuses to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *D'Angelo*, 422 F.3d at 1236 (quotation marks and citation omitted).

---

[6]Plaintiff admits that he did not ask St. Mary's for any accommodations. (Pl.'s Dep. 107:21-25.)

Plaintiff, however, did not request an accommodation. (Pl.'s Dep. 107:21-25.) Furthermore, Plaintiff has failed to present any other evidence that in any way connects his termination to his sleep apnea and insomnia. The Court therefore finds that Plaintiff has not established that St. Mary's discriminated against him because of his disability. Thus, Plaintiff has failed to establish a prima facie case of discrimination under the ADA, and St. Mary's Motion for Summary Judgment is hereby granted on this claim.[7]

## II. State Law Claims

Having granted summary judgment in favor of Defendant as to all of Plaintiff's federal law claims, the Court declines to exercise jurisdiction over Plaintiff's remaining state law claims.[8] Accordingly, those claims are dismissed without prejudice.

---

[7] Even if Plaintiff could establish a link between his termination and sleep apnea or insomnia, the Court finds that the Defendant articulated a legitimate non-discriminatory reason for Plaintiff's termination-- violation of St. Mary's drug policy. Plaintiff's arguments that he did not violate the drug policy are unsupported by the record. St. Mary's drug policy requires persons who are taking prescription drugs that "*could* affect their ability to perform their job in a safe and efficient manner" to notify their supervisor of their prescription drug use. (Drug and Alcohol Policy 1.) It is undisputed that Plaintiff failed to inform his supervisor of his prescription drug use, and consequently St. Mary's at a minimum reasonably believed that Plaintiff violated the drug policy. Furthermore, Plaintiff has presented no other evidence of pretext. Thus, St. Mary's is entitled to summary judgment even if Plaintiff had established a prima facie case of discrimination under the ADA.

[8] Plaintiff alleges state law claims for invasion of privacy and negligence. To the extent that Plaintiff attempts to allege a federal law claim for a violation of what he describes as his "constitutional right to privacy," the Court grants summary judgment to Defendant as to that claim because Defendant is not a state actor.

CONCLUSION

Defendant's Motion for Summary Judgment (Doc. 27) is granted as to Plaintiff's federal law claims. Plaintiff's state law claims are dismissed without prejudice.

IT IS SO ORDERED, this 6th day of March, 2007.

S/Clay D. Land<br>CLAY D. LAND<br>UNITED STATES DISTRICT JUDGE